UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JASMIN B. o/b/o K.S., a Minor,

                                                                                    Plaintiff,

v.                                                                              CIVIL ACTION NO.: Civ. 23 Civ. 8694 (SLC)

COMMISSIONER OF SOCIAL SECURITY,

                                                                                    Defendant.

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

In March 2021, Plaintiff Jasmin B.[1] applied for Child Supplemental Social Security Income ("SSI") benefits under the Social Security Act on behalf of her minor daughter, K.S. (R. 164-74).[2] The Commissioner of Social Security denied the application, and Plaintiff, proceeding pro se, commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Commissioner's decision denying benefits. (ECF No. 1). For the reasons set forth below, the Commissioner's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (the "Commissioner's Motion")[3] is GRANTED.

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Citations to "R." refer to the Certified Administrative Record. (ECF No. 11).

[3] The Commissioner filed a brief without an accompanying notice of motion, citing Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) and this Court's Standing Order, No. 22-MC-329 (LTS). (ECF No. 15 at 4 n.1). That Standing Order and Federal Rule of Civil Procedure 7(b)(1) require that any "request for a court order must be made by motion[,]" and filing a brief or memorandum of law "in support of a motion does not relieve the putative movant of the need to file a separate document styled as a motion[.]" Rodriguez v. Comm'r of Soc. Sec., No. 22 Civ. 10665 (GS), 2024 WL 1342834, at *1 n.2 (S.D.N.Y. Mar. 29, 2024). Given the nature of the relief the Commissioner is seeking—affirmance of the decision denying benefits (ECF No. 15 at 25)—the Court will overlook this failure to comply with Rule 7(b)(1) and deem the Commissioner's brief to constitute his Motion under Rule 12(c). (ECF No. 20). See Medranda v. O'Malley, No. 23 Civ. 6623 (SLC), 2024 WL 4100567, at *1 n.2 (S.D.N.Y. Sept. 6, 2024).

1

## II. BACKGROUND

### A. Administrative Proceedings

On February 17, 2021, Plaintiff filed an application on behalf of K.S., who was born in March 2015, alleging a disability based on speech delay, asthma, and gastrocnemius equinus[4] beginning on October 1, 2015. (R. 16, 47, 164–65, 179–88). The Commissioner denied the application initially and on reconsideration. (R. 46–58, 59–77, 84–91, 93–106). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (R. 92). On June 10, 2022, ALJ Ifeoma Iwuamadi held a video hearing, at which Plaintiff, represented by counsel, appeared and testified. (R. 28–45, 125–40).

### B. The ALJ's Decision

On October 19, 2022, the ALJ issued a decision denying K.S.'s application for benefits. (R. 15–23 (the "ALJ Decision")). The ALJ noted that K.S. is a "school-age" child, as defined under the Commissioner's regulations, on February 17, 2021, the application date, and was a school-age child as of the date of the ALJ Decision. (R. 16). The ALJ found that K.S. had not engaged in substantial gainful activity since the application date. (R. 16).

The ALJ next found that K.S. had the severe impairments of asthma, speech delay, and GE, but that neither those impairments nor a combination thereof met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (R. 16). The ALJ also found that K.S. did not have an impairment or combination of impairments that functionally equaled the severity of the Listings. (R. 17–23). Accordingly, the ALJ found that K.S.

---

[4] This condition is characterized by increased dorsiflexion of the ankle and can have a higher incidence in children with neuropsychiatric or developmental delays. See https://www.ncbi.nlm.nih.gov/books/NBK606130/ (last visited October 23, 2024).

had not been under a disability within the meaning of the Act since the application date and, therefore, was not entitled to benefits. (R. 23).

On August 14, 2023, the Appeals Council denied Plaintiff's request for review, making the ALJ Decision the final decision of the Commissioner. (R. 1–5).

### C. Procedural History

On October 3, 2023, Plaintiff, proceeding pro se, filed the Complaint seeking review of the ALJ Decision. (ECF No. 1). After Plaintiff did not file a motion for judgment on the pleadings, the Commissioner filed his Motion on February 9, 2024 (ECF No. 15; see ECF No. 20), and on March 4, 2024, the Court afforded Plaintiff another opportunity to file a response. (ECF No. 17). On April 2, 2024, Plaintiff filed a letter in response to the Commissioner's Motion. (ECF Nos. 19; 20). On May 3, 2024, the Commissioner filed a reply. (ECF No. 21).

## III. DISCUSSION

### A. Legal Standards

#### 1. Standard of Review

Under Rule 12(c), a party is entitled to judgment on the pleadings if he establishes that no material facts are in dispute and that he is entitled to judgment as a matter of law. See Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999).[5]  The Act provides that the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). A court may set aside the Commissioner's decision denying SSI benefits if it is not supported by substantial evidence or was based on legal error. See Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). Judicial review, therefore, involves two levels of inquiry.

---

[5] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

First, the Court must decide whether the ALJ applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Calvello v. Barnhart, No. 05 Civ. 4254 (SCR) (MDF), 2008 WL 4452359, at *8 (S.D.N.Y. Apr. 29, 2008).  Second, the Court must decide whether the ALJ's decision was supported by substantial evidence.  Tejada, 167 F.3d at 773.  "In determining whether substantial evidence exists, a reviewing court must consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Finn v. Comm'r of Soc. Sec., No. 21 Civ. 5457 (SLC), 2022 WL 4245196, at *3 (S.D.N.Y. Sept. 15, 2022).

Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Burgess v. Astrue, 537 F.3d 117, 127 (2d Cir. 2008).  The substantial evidence test applies not only to the factual findings, but also to the inferences and conclusions drawn from those facts.  See, e.g., Carballo ex rel. Cortes v. Apfel, 34 F. Supp. 2d 208, 214 (S.D.N.Y. 1999).  In determining whether the administrative record contains evidence to support the denial of claims, the Court must consider the whole record, and weigh all evidence to ensure that the ALJ evaluated the claim fairly. See, e.g., Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam).  The Commissioner, not the Court, resolves evidentiary conflicts and appraises the credibility of witnesses, including the claimant.  See, e.g., Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Thomas v. Comm'r of Soc. Sec. Admin., 479 F. Supp. 3d 66, 82 (S.D.N.Y. Aug. 18, 2020) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant

is represented by counsel. See Lamay v. Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009). To this end, the ALJ must make "every reasonable effort" to help an applicant get medical reports from her medical sources. 20 C.F.R. § 416.912(b). Ultimately, "[t]he record as a whole must be complete and detailed enough to allow the ALJ to determine the claimant's residual functional capacity." Rosario v. Comm'r of Soc. Sec., No. 20 Civ. 7749 (SLC), 2022 WL 819810, at *6 (S.D.N.Y. Mar. 18, 2022). When there are inconsistencies, gaps, or ambiguities in the record, the regulations give the ALJ options to collect evidence to resolve these issues, including re-contacting the treating physician, requesting additional records, arranging for a consultative examination, or seeking information from others. 20 C.F.R. § 416.920b.

The Act authorizes a court, when reviewing the Commissioner's decisions, to order further proceedings: "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Butts v. Barnhart, 388 F.3d 377, 382 (2d Cir. 2004), amended in part on other grounds, 416 F.3d 101 (2d Cir. 2005). If "'there are gaps in the administrative record or the ALJ has applied an improper legal standard,'" the Court will remand the case for further development of the evidence or for more specific findings. Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999) (quoting Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)). Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision. Pratts, 94 F.3d at 39. If, however, the reviewing court concludes that an ALJ's determination to deny benefits was not supported by substantial evidence, a remand solely for calculation of benefits may be

appropriate. See, e.g., Butts, 388 F.3d at 386 (discussing Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000)).

### 2. Standard for Disability Claims for Children

For purposes of SSI benefits, a child (i.e., a person under the age of 18) is disabled within the meaning of the Act, and thus entitled to such benefits, when the child has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). To assess whether a child claimant qualifies for SSI, the ALJ must conduct a three-step sequential inquiry. See Pollard v. Halter, 377 F. 3d 183, 189 (2d Cir. 2004). If it is determined that a claimant is not disabled at any step in the evaluation process, the ALJ does not continue to the next step.

At step one, the ALJ must find that the claimant is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.924(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or age, education, or work experience."). At step two, the ALJ must determine whether the child has a medically determinable severe impairment, i.e., an impairment or combination of impairments "that causes . . . more than minimum functional limitations." Id. § 416.924(c). Finally, at the third step, the ALJ must assess whether the child has an impairment or combination of impairments that meets, medically equals, or functionally equals one of the impairments in the "Listings." Id. § 416.924(d). A Listing is met when the impairment directly satisfies the criteria contained in the

Listing, § 416.924(d), and an impairment medically equals a Listing "if it is at least equal in severity and duration to the criteria of any listed impairment." Id. § 416.926(a).

If a child's impairments do not meet or are not the medical equivalent of any of the Listings, the ALJ must then proceed to step three to consider whether the child's impairment is nevertheless "functionally equal" to a Listing. 20 C.F.R. § 416.926a(a). Impairments are functionally equivalent to a Listing when they result in two "marked"[6] or one "extreme"[7] limitation in two of the six delineated domains of child functioning. Id. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. § 416.926a(b)(1)(i)–(vi).

### 3. Considerations in Determining Disability for Children

SSR 09-1p "explains the standards employed to determine whether a child's impairment(s) functionally equals the listings." Lent v. Comm'r of Soc. Sec., No. 19 Civ. 1127 (ER) (RWL), 2020 WL 1516466, at *8 (citing SSR 09-1p, 2009 WL 396031, at *1). "Described as the 'whole child' approach, SSR 09-1p provides that functional equivalence determinations start with 'considering the child's functioning without considering the domains or individual impairments'

---

[6] A limitation is "marked" when it "interferes seriously with [the child's] ability to independently initiate, sustain or complete activities" and "is the equivalent of the functioning [the ALJ] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C.F.R. § 416.926a(e)(2)(i). For the sixth functional domain, "health and physical well-being," a marked limitation is found where the child's impairments cause frequent illness or where the child has "frequent exacerbations of . . . impairment(s) that result in significant, documented symptoms or signs." Id. § 416.926a(e)(2)(iv).

[7] A limitation is "extreme" when it is "more than marked," and "interferes very seriously with [the child's] ability to independently initiate, sustain or complete activities," such as those demonstrated by "standardized testing . . . scores that are at least three standard deviations below the mean. Id. § 416.926a(e)(3)(i). This is the rating given to the worst limitations. Id.

7

and, in light of the case record, evaluating how a child's 'functioning is affected during all . . . activities' including everything done at home, school, and in the community." Id. (quoting SSR 09-1p, 2009 WL 396031, at *1). "Once the ALJ determines that a child's activities are 'limited' in some way, they must 'determine which domains are involved in those activities' to determine whether the identified impairments 'could affect those domains and account for the limitations.'" Id. (quoting SSR 09-1p, 2009 WL 396031, at *2). "Only after that will the ALJ 'rate the severity of the limitations in each affected domain' to determine whether the child is 'disabled' as defined in the Act." Id. (quoting SSR 09-1p, 2009 WL 396031, at *2). "This technique for determining functional equivalence accounts for all of the effects of a child's impairments singly and in combination—the interactive and cumulative effects of the impairments—because it starts with a consideration of actual functioning in all settings." SSR 09-1p, 2009 WL 396031, at *2.

The Commissioner's regulations set forth the factors an ALJ will consider in evaluating the effects of a child's impairment(s) on his or her functioning. 20 C.F.R. § 416.924a(b). These factors include, inter alia, "[h]ow well [the child] can initiate, sustain, and complete [his or her] activities, including the amount of help or adaptations [the child] need[s], and the effects of structured or supportive settings." Id. § 416.924a(b)(5). Specifically, the regulations provide:

> [The Commissioner] will consider how effectively you function by examining how independently you are able to initiate, sustain, and complete your activities despite your impairment(s), compared to other children your age who do not have impairments. We will consider:
>
> (A) The range of activities you do;
>
> (B) Your ability to do them independently, including any prompting you may need to begin, carry through, and complete your activities;

> (C) The pace at which you do your activities;
>
> (D) How much effort you need to make to do your activities; and
>
> (E) How long you are able to sustain your activities.

20 C.F.R. § 416.924a(b)(5)(i).  The Commissioner's regulations recognize that "[a] structured or supportive setting may minimize signs and symptoms of [a claimant's] impairment(s) and help to improve [a claimant's] functioning while [he or she is] in it, but [the claimant's] signs, symptoms, and functional limitations may worsen outside this type of setting."  Id. § 416.924a(b)(5)(iv)(C).  "Therefore, [the Commissioner] will consider [the claimant's] need for a structured setting and the degree of limitation in functioning [the claimant has] or would have outside the structured setting."  Id.  "Even if [a claimant is] able to function adequately in the structured or supportive setting, [the Commissioner] must consider how [the claimant] function[s] in other settings and whether [the claimant] would continue to function at an adequate level without the structured or supportive setting."  Id.

The Commissioner also recognizes that "[c]hildren may function differently in unfamiliar or one-to-one settings than they do in their usual settings at home, at school, in childcare or in the community."  20 C.F.R. § 416.924a(b)(6).  Accordingly, the regulations provide:

> You may appear more or less impaired on a single examination (such as a consultative examination) than indicated by the information covering a longer period. Therefore, we will apply the guidance in paragraph (b)(5) of this section when we consider how you function in an unusual or one-to-one situation. We will look at your performance in a special situation and at your typical day-to-day functioning in routine situations. We will not draw inferences about your functioning in other situations based only on how you function in a one-to-one, new, or unusual situation.

Id.

Similarly, SSR 09-2p "explains the evidence [the Commissioner] need[s] to document a child's impairment-related limitations, the sources of evidence [the Commissioner] commonly see[s] in childhood disability cases, how [the Commissioner] consider[s] the evidence we receive from early intervention and school programs (including special education), how [the Commissioner] address[es] inconsistencies in the evidence, and other issues related to the development of evidence about functioning."  SSR 09-2p, 2009 WL 396032, at *2.  In the event of inconsistencies in the evidence, SSR 09-2p notes that "an apparent inconsistency may not be a true inconsistency[,]" and provides the following illustration:

> For example, the record for a child with attention-deficit/hyperactivity disorder (AD/HD) may include good, longitudinal evidence of hyperactivity at home and in the classroom, but show a lack of hyperactivity during a CE.  While this may appear to be an inconsistency, it is a well-known clinical phenomenon that children with some impairments (for example, AD/HD) may be calmer, less inattentive, or less out-of-control in a novel or one-to-one setting, such as a CE.

Id. at *12 (citing 20 C.F.R. § 416.924a(b)(6)).  In the Commissioner's own words:

> This example highlights the importance of getting a full picture of the "whole child" and of our longstanding policy that we must consider each piece of evidence in the context of the remainder of the case record.  Accepting the observation of the child's behavior or performance in an unusual setting, like a CE, without considering the rest of the evidence could lead to an erroneous conclusion about the child's overall functioning.

Id. at *12 n.24.

B. **Application**

The Court construes Plaintiff to be arguing that substantial evidence does not support the ALJ's Decision finding that K.S. is not disabled.  (ECF No. 19 at 1 (asking that the ALJ's Decision "be reconsidered")).  The Commissioner argues that substantial evidence does support the ALJ's Decision that K.S. was not disabled within the meaning of the Act.  (ECF No. 15 at 19–26).

10

Accordingly, the question presented is whether substantial evidence supports the ALJ's Decision. The Court finds that it does and, therefore, the ALJ's Decision must be sustained under the deferential standard of review here. See Cichocki v. Astrue, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (explaining that ALJ "need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of [that] decision").

The Court focuses on the third step of the ALJ's analysis, at which the ALJ was required to decide whether K.S.'s impairments meets or "medically" or "functionally" equals one of the Listings. 20 C.F.R. § 416.924(c), (d). To find functional equivalence, the child must exhibit a "marked" limitation in two of the six functional domains, or an "extreme" limitation in one of the domains. See 20 C.F.R. § 416.926a(a). As one judge in this District has explained, "[t]he first five domains consider the child's ability to acquire and use information, attend and complete tasks, interact and relate with others, move about and manipulate objects, and care for him[ or her]self[,]" while "[t]he sixth domain considers the child's health and physical well-being." Michelle Q. o/b/o J.J.S.Q. v. Comm'r of Soc. Sec., No. 23 Civ. 9142 (GRJ), 2024 WL 3676581, at *3 (S.D.N.Y. Aug. 3, 2024) (citing 20 C.F.R. §§ 416.926a(b)(i-vi)). Here, the ALJ considered "[a]ll of the relevant evidence in the record[,]" including "objective medical evidence from medical sources, information from other sources, such as schoolteachers, family members, or friends; the claimant's statements (including statements from the claimant's parent(s) or other caregivers); and any other relevant evidence in the case record, including how the claimant functions over time and in all settings (i.e., at home, at school, and in the community)." (R. 18). Based on all of this evidence, the ALJ concluded that K.S. had: (i) "no limitation in acquiring and using information;" (ii) no limitation in attending and completing tasks;" (iii) "less than a marked

11

limitation in interacting and relating with others;" (iv) <u>less than a marked</u> limitation in moving about and manipulating objects;" (v) <u>no</u> limitation in the ability to care for herself;" and (vi) "<u>less than a marked</u> limitation in health and physical well-being." (R. 18). Having reviewed the record, the Court finds that substantial evidence supports each of these findings and the conclusion that K.S. was not disabled.

First, as to the domain of K.S.'s ability to acquire or learn information, the ALJ considered that her teacher, Kathleen Klobus, found that K.S. had no problem in eight of the ten activities in this area and only a "slight" problem in expressing ideas in written form, with the only activity in which K.S. had an "obvious" problem being her ability to provide organized oral explanations and adequate descriptions. (R. 22 (citing R. 201)). Ms. Klobus noted that K.S. was "a very bright child" who "actively engage[d]" in class, and attributed K.S.'s "difficulties in catching up to new lessons" to "poor attendance," not to any limitation in this domain. (R. 201). The ALJ also considered the findings of the psychiatric consulting examiner, Abrah Sprung, Ph.D., who evaluated K.S. in person and found her to have expressive language appropriate for her age, coherent, linear, and goal directed thought processes, intact attention and concentration, intact recent and remote memory skills, and intellectual functioning in the average range. (R. 22 (citing R. 405–06, 409)). The ALJ found persuasive Dr. Sprung's opinion that K.S. had no limitation in her ability to attend to, follow, and understand age-appropriate directions, learn in accordance with her cognitive functioning, and ask questions and request assistance in an age-appropriate manner. (R. 21 (citing R. 406)). The ALJ also relied on and found persuasive the opinion of Guadalupe Piatt, M.D., who, after a review of the medical record, found that K.S. had no limitation in acquiring and using information. (R. 22 (citing R. 797)). Finally, the ALJ relied on Plaintiff's testimony (corroborated

12

by other evidence in the record) that, although K.S. had an IEP[8], she remained in a "regular education" curriculum "in a small class setting" from which she was excused three times per week for speech and occupational therapy.  (R. 18 (citing R. 37 ("Reading and math, she's okay at grade level."), 41 ("She sees the speech therapist."); see R. 20 (citing R.275–85)).  Therefore, the Court finds that substantial evidence—including the medical opinions from Dr. Sprung and Dr. Piatt, the teacher's evaluation by Ms. Klobus, the IEP, and Plaintiff's testimony—support the ALJ's finding of no limitation in the domain of ability to acquire or learn information.  See Ryan o/b/o V.D.C. v. Comm'r of Soc. Sec., No. 21-2947, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022) (summary order) (finding that school records, testimony, treatment notes, and medical opinions provided substantial evidence to support ALJ's conclusion that claimant did not have at least a marked limitation in acquiring or using information).

As to the second domain, attending and completing tasks, the ALJ noted that while Plaintiff and K.S.'s teachers described her as "easily distracted[,]" (R. 19, 772), the medical records did not show significant concerns or symptoms of "ADHD, ODD, or anxiety."  (R. 772).  The ALJ relied on Ms. Klobus's response, in her teacher questionnaire, that K.S. "was very bright and had "slight to no problems" in this domain.  (R. 22 (citing R. 202)).  Also relevant was Dr. Sprung's finding that K.S.'s "attention, concentration, and memory were intact" and that she did not have any limitations in this domain, as Dr. Piatt also found.  (R. 22 (citing R. 405–06, 797)).  The combination of K.S.'s educational records, Ms. Klobus's questionnaire responses, the medical opinions, and the treatment records provide substantial evidence to support the ALJ's finding that K.S. did not have a limitation in the second domain.

---

[8] Individualized education program.  (R. 275–85).

As to the third domain, the ALJ found that K.S. had a less than marked, but not a marked, limitation in interacting and relating with others. (R. 22). The ALJ noted that while K.S.'s most recent IEP indicated "a moderate expressive language delay as well as a moderate-severe speech sound disorder," the IEP also noted that K.S. had "established positive rapports with her peers" and was "able to communicate with her classmates and teachers and demonstrates positive mood and coping skills." (R. 22 (citing R. 414)). The ALJ relied on Ms. Klobus's observation that, during virtual learning, K.S.'s "speech hinders her with communicating and writing but not severely[,]" and Ms. Klobus's rating of K.S. as having slight to no problems in the activities that comprise this domain. (R. 22 (citing R. 203)). The ALJ also cited the opinions of the consultative examiners, Elon Fernandez, M.D., and Dr. Sprung, that K.S. had no limitations in her abilities to adequately maintain appropriate social behavior and participate in age-appropriate educational, social, and recreational activities. (R. 22 (citing R. 402, 406, 410)). The ALJ also relied on Dr. Piatt's opinion that K.S. had a less than marked limitation in this domain. (R. 22 (citing R. 797)). Therefore, substantial evidence, in the form of the educational records and medical opinion evidence, supports the ALJ's finding that the balance of the records supported a slightly higher limitation of less than marked for the third domain. See Lisa T. o/b/o T.M. v. Kijakazi, No. 21 Civ. 6052L (DGL), 2023 WL 24048, at *3 (W.D.N.Y. Jan. 3, 2023) (finding that ALJ appropriately balanced evidence in finding that child's limitations in relevant domains were "less than marked").

As to the fourth domain, the ALJ found that K.S. had a less than marked limitation in moving about and manipulating objects. (R. 22). The ALJ began by noting that K.S. required occupational and physical therapy, as Plaintiff noted in her testimony (R. 22 (citing R. 33–34)),

and as is documented elsewhere in the record. (See, e.g., R. 310–17, 363, 402, 419–21, 763). While Plaintiff expressed concerns about K.S. walking on her toes (R. 33, 35), her medical records indicated that as of March 2022 K.S. was "[a]ble to jump[ and] balance on each leg" and was "able to perform [a] normal gait with prompting" and "heelwalk." (R. 780). The ALJ also relied on Dr. Piatt's assessment that K.S.'s limitation was less than marked in this domain. (R. 22 (citing R. 798)). In addition to the evidence the ALJ cited, other evidence supports the ALJ's finding, including Plaintiff's testimony that K.S. "can participate" in her physical activities at school "as long as she could handle[,]" (R. 38), medical records describing her ability to dance and skip (R. 332), and Dr. Fernandez's observations that K.S. "takes gym, plays sports, . . . and plays with friends[,]" has a normal gait, can walk on her heels and toes "without difficulty, and has gross motor skills that were normal for her age. (R. 400–01). In addition, Lana Leytes, M.D., another consultative examiner who examined K.S. in August 2021, offered similar observations about her gait and walk. (R. 642). Thus, the balance of the evidence in the record provides substantial support for the ALJ's finding that K.S.'s limitation in the fourth domain was less than marked.

As to the fifth domain, the ALJ found that K.S. had no limitations in caring for herself. (R. 22). As support, the ALJ pointed to Dr. Piatt's opinion that the medical record did not reflect any problems in this domain and Ms. Klobus's statement that she had not observed any problem in this domain. (R. 22 at 798; 205). In addition, other evidence supporting the ALJ's assessment includes Dr. Sprung's observations (R. 406) and her IEP (R. 415). Accordingly, substantial evidence supports the ALJ's finding as to the fifth domain.

As to the sixth domain, the ALJ found that K.S. had less than marked limitations with respect to her health and physical well-being. (R. 22). In support of this finding, the ALJ cited her

15

regular need for asthma medication to control her symptoms and for shoe inserts and foot splints at night. (R. 22 (citing R. 381, 385–89, 652, 654, 661)). The ALJ balanced this evidence against other evidence that K.S. was able to participate in gym class "and was often observed moving about." (R. 22 (citing R. 38, 401, 415, 643)). In addition, the evidence cited above in relation to the fourth domain, including Plaintiff's testimony, medical records, educational records, and the observations of Dr. Fernandez and Dr. Leytes, also support the ALJ's assessment of a less than marked limitation in the sixth domain. (R. 38, 332, 400–01, 642).

Although Plaintiff has not directly addressed the ALJ's findings in the six functional domains,[9] she has submitted medical records showing that K.S. has received additional treatment for asthma in October 2023 and March 2024. (ECF No. 19 at 3–12). As the Commissioner correctly points out, however, these records were not presented to the agency and are not material to the period of alleged disability—February 2021 (the application date) to October 2022 (the date of the ALJ's Decision)—that the ALJ evaluated. (ECF No. 21 at 6–7). See Pollard, 377 F.3d at 193 (explaining that, to be material, evidence must be "both (1) relevant to the claimant's condition during the timer period for which benefits were denied and (2) probative"); see also Caron v. Colvin, 600 F. App'x 43, 44 (2d Cir. 2015) (holding that medical finding that post-dated period evaluated by ALJ was not "material evidence"). In any event, the new records discuss examinations by two providers, Amanda Beck Murphy, M.D., and Christine Mavaro, D.N.P., whose treatment notes during the relevant period are in the agency record, such that the ALJ did in fact have the benefit of their evaluations and findings in assessing K.S.'s abilities

---

[9] The Commissioner argues that, by failing to do so, Plaintiff has waived any challenge to the ALJ's domain findings. (ECF No. 21 at 4). In recognition of Plaintiff's pro se status, the Court does not find waiver here.

in six functional domains during the period from February 2021 to October 2022. (R. 362–65 (Murphy), 374–77 (Mavaro), 567–69 (Mavaro), 661–64 (Mavaro), 667–69 (Mavaro), 751–54 (Murphy), 772–75 (Murphy)). Therefore, the new records Plaintiff has submitted do not provide grounds to remand to the agency for further administrative proceedings. See Deashon T. v. Comm'r of Soc. Sec., No. 23 Civ. 1541 (MAD/MJK), 2024 WL 4442750, at *4 (N.D.N.Y. May 31, 2024) (finding that evidence that was duplicative of evidence already in agency record did not warrant remand), adopted by, 2024 WL 4023898 (N.D.N.Y. Sept. 3, 2024).

Because substantial evidence supports the ALJ's findings as to K.S.'s abilities in each of the six domains, the Court concludes that substantial evidence supports the ALJ's finding that K.S. has not been disabled under the Act since February 17, 2021. (R. 23).

\*   \*   \*

The Court observes that Plaintiff has been a diligent and assertive advocate for her daughter's well-being. While the Court has concluded that substantial evidence supports the ALJ's finding that, for the period February 2021 to October 2022, K.S. was not disabled within the meaning of the Act, Plaintiff is not foreclosed, to the extent that K.S.'s impairments worsen or new impairments arise, from filing a future application based on more recent records. See Brown o/b/o Brown v. Chater, 932 F. Supp. 71, 75 (S.D.N.Y. 1996) (explaining that plaintiff's submission of evidence of new asthma attacks that occurred after the ALJ hearing was "in essence, a new application for benefits arising out of a new set of facts[,]" the "proper course of action" for which was "to submit a new application, relying on the [] new attacks").

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's Motion (ECF No. 15) is **GRANTED** and the final decision of the Commissioner that K.S. was not disabled under the meaning of the Act during the period from February 17, 2021 to October 19, 2022, is **AFFIRMED**.

The Clerk of the Court is respectfully directed to enter judgment in accordance with this Opinion and Order and close this case.

Dated:   New York, New York
         October 23, 2024

SO ORDERED.

_____
SARAH L. CAVE
United States Magistrate Judge